# Commonwealth *v.* Fidelity and Deposit Company of Maryland, Appellant.

*Taxation—Foreign surety companies—Premiums collected on Federal business—Act of Congress of August 13, 1899, C. 282.*

1. The execution of bonds by foreign surety companies within the territorial limits of the Commonwealth of Pennsylvania is business done within the State and taxable as such.

2. The Act of Congress of August 13, 1894, Chapter 282, providing in effect that no company shall transact business as a surety company with the Federal Government beyond the limits of the state or territory under whose laws it was incorporated until it shall appoint an agent or attorney within the jurisdiction of the court for the judicial district wherein such suretyship is to be undertaken is intended to secure and make convenient the service of legal process on the company. The act does not authorize surety companies coming within its provisions to enter a state and therein transact business without the consent of the state or without complying with the conditions or terms which the state may prescribe.

3. A tax by a state on the premiums of a surety company paid the company for becoming surety on bonds given to the Federal Government is not an interference with the functions of the Federal Government or an attempt to exercise any functions of the Federal Government.

4. In an action of assumpsit brought by the Commonwealth of Pennsylvania to recover from a foreign surety company the tax imposed by the Act of June 28, 1895, P. L. 408, section 1, on premiums paid to such surety company, where it appeared that such premiums had been collected in the course of business transacted within the Commonwealth with the Federal Government in matters relating to internal revenue, customs, United States Government officials, United States Government contract and banks for United States deposits and bonds given in courts of the United States in litigation there pending, the defendant's contention that the tax could not legally be imposed was without merit, and the court made no error in directing judgment to be entered for plaintiff for the amount of the claim.

Argued Jan. 5, 1914.   Appeal, No. 29, May T., 1913, by defendant, from judgment of C. P. Dauphin County,

68    COM. *v.* FIDELITY & DEPOSIT CO., Appellant.

Commonwealth Docket, 1910, No. 76, on verdict for plaintiff, in case of Commonwealth of Pennsylvania v. Fidelity and Deposit Company of Maryland. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover a tax on premiums of a foreign surety company.

The case was tried by the court without a jury.

The facts appear by the following opinion of KUNKEL, P. J. :

This is an action brought by the Commonwealth of Pennsylvania against the defendant company to recover the sum of $352.92, being the balance due on a settlement made against it by the insurance commissioner and state treasurer for tax on its gross premiums received from business done within this State for the tax year ending December 31, 1909. Trial by jury has been waived and the case has been submitted to us upon the statement and affidavit of defense, from which we find the following

FACTS:

The defendant is a corporation duly incorporated and organized under the laws of the State of Maryland, with power to become surety upon any bond, undertaking or other obligation of whatsoever nature, character or description. It was duly authorized by the insurance commissioner of the Commonwealth of Pennsylvania to become and be accepted as sole surety on all bonds, undertakings and obligations required or permitted by law, by the charters, ordinances, rules and regulations of any municipality, body, board, organization or public officer in the Commonwealth of Pennsylvania, according to the terms of its charter and in conformity with the laws of the Commonwealth. Act of June 26, 1895, P. L. 343. It was also duly granted authority by the attorney general of the United States to become sole surety where

theretofore one surety or two or more sureties were required by the laws of the United States. During the year 1909 it became surety on bonds in the following matters, to wit: "Internal revenue, customs, United States Government officials, United States Government contracts and banks for United States deposits, bonds given in courts of the United States in litigation there pending," the bonds and undertakings being required by the laws of the United States and being such as are referred to in Section 1 of the Act of Congress of August 13, 1894, Chapter 282, and all being executed within the territorial limits of the judicial districts of the courts of the United States within the Commonwealth of Pennsylvania. The amount of the gross premiums from the business thus done during the year 1909 was $17,646.86. The Commonwealth claims in this action a tax of two per cent. on these premiums, amounting to $352.92, the claim being based on the proviso in Section 1 of the Act of Assembly of June 28, 1895, P. L. 408, which declares, "That hereafter the annual tax upon premiums of insurance companies of other states or foreign governments shall be at the rate of two per centum upon the gross premiums of every character and description received from business done within this Commonwealth within the entire calendar year preceding."

DISCUSSION.

It cannot seriously be disputed that the execution of the bonds upon which the defendant company became surety, which it is admitted took place within the territorial limits of the judicial districts of the courts of the United States within the Commonwealth of Pennsylvania, was business done within the State. The defendant, however, contends that it was authorized to do this business in the State by the Act of Congress of August 13, 1894, Chapter 282, and in transacting the business it was acting in connection with federal agencies in carrying on governmental functions, and that therefore it is

not within the power of the Commonwealth of Pennsylvania to impose a tax upon it or in any wise to interfere with it. This contention we are not able to adopt. The defendant company is authorized by its charter to enter into contracts of suretyship as a business. By the Act of the General Assembly of Pennsylvania of June 26, 1895, P. L. 343, it was authorized to transact business in this State. By the Act of Congress of August 13, 1894, Chapter 282, having complied with the conditions therein set forth, it became acceptable to the Federal Government as a sole surety in those cases in which the Federal Government was interested, and in which therefore one surety or two or more sureties were required. We find nothing in the Act of Congress to support the proposition that the defendant was authorized by it to transact its business in the State of Pennsylvania. The act is silent as to the place where the contract of suretyship is to be entered into. True it is provided in Section 2 that no company shall do business under the provisions of the act beyond the limits of the state or territory under whose laws it was incorporated, and in which its principal office is located, until it should appoint an agent or attorney within the jurisdiction of the court for the judicial district wherein such suretyship is to be undertaken. But the manifest object of that provision was to secure and make convenient the service of legal process upon the company. It would be a strained interpretation of the section to hold that it authorized surety companies coming within its provisions to enter a state and therein transact business without the consent of the state or without complying with the condition or terms which the state might prescribe. On the other hand, the inference is to be drawn from the provisions of Section 5 of the act, which declares that wherever the obligation is made it is to be treated as made in the district to which it is returnable or in which it is filed or in which the principal resided, that the Federal Government was not concerned about the place

where the obligation was actually made. The defendant company having transacted its business in this State by consent of the State, it must comply with the conditions which the State has laid down: List v. Com., 118 Pa. 322; Thorne v. Travellers Ins. Co., 80 Pa. 15; Paul v. Virginia, 75 U. S. 168; Hooper v. California, 155 U. S. 648; Pembina Con. Silver Mining & Milling Co. v. Pa., 125 U. S. 181; Horn Silver Mining Co. v. N. Y., 143 U. S. 305. The tax which is now claimed is an exaction for the privilege of doing business in the State: Germania Life Ins. Co. v. Com., 85 Pa. 513.

It is urged upon us that to require the defendant company to pay a tax for the privilege of doing the business in the State of becoming surety for federal officials and in federal matters is to interfere with the functions of the Federal Government. We are not able to see how the statute requiring the tax in question has that effect. The defendant was free to enter into the contract of suretyship with respect to all the federal matters out of which the premiums, which are made the basis of the tax, were received. It could have done so in the place of its domicil. There is no requirement that the contracts of suretyship should be entered into at any particular place. Indeed, as we have heretofore said, Section 5 of the act renders the place where the contract is made of no consequence. The most natural place in which to make the contracts would be in the defendant's home state. In the absence of any legislation fixing the place the fair presumption would be that the corporation's domicil, or those states wherein permission should be given it to do business, was intended to be the place. The defendant company, having preferred for its own convenience to make its contracts within the State of Pennsylvania in respect to the federal matters, rather than in its own state, may do so only on the terms which the State of Pennsylvania has fixed. It is not in a position therefore to complain that, because it may not transact what it calls federal business in the State of

Pennsylvania without complying with the conditions prescribed by the State, the functions of the Federal Government are thus interfered with, when it may do that very business in the state of its domicil.

Nor can we understand how the defendant can be said to have been acting for the Federal Government at all either before or after the contracts of suretyship were entered into. The contracts were entered into at the request of the principals, not at the request of the Federal Government. The Federal Government was not interested in having this defendant company rather than another engage to answer for the conduct or the acts of its officials. If the defendant had refused to act as surety, a domestic company or an individual surety or sureties would have answered. It might just as well be said that the individual sureties required before the Act of Congress was passed were acting for the Federal Government in matters of this kind. They were acting for themselves and their principals. They were selected by their principals and accepted by the Federal Government without cost or charge to it. So was this defendant company acting when it assumed the obligation of becoming surety. It then stood in relation to the Federal Government as an insurer against possible loss or damage by reason of the fault of its officials. It did not undertake to perform the officials' duties. It did not exercise any governmental function. It was not in the employ of the Federal Government. It was in no sense an instrumentality of government.

The act of assembly which imposes the tax lays no tax on the bonds nor on the contracts of suretyship, and in this particular the present case is to be distinguished from the cases of Ambrosini v. U. S., 187 U. S. 1, and Bettman v. Warwick, 108 Fed. 46, which have been called to our attention. The tax, as we have said, is a charge for the privilege of transacting business in the State, measured by the amount of the business done. There is no obstacle in the way of the Federal Govern-

ment accepting a corporate surety that has authority to act in the state in which it undertakes to contract, and we are not inclined to believe that the government contemplated accepting a surety company which had no such authority. The surety company could only obtain the authority by complying with the laws of the State.

### CONCLUSIONS OF LAW.

Wherefore we conclude:

1. That the Act of June 28, 1895, under which the present tax is claimed, in no wise interferes with the functions of the Federal Government, so far as it applies to and affects the defendant company.

2. That the defendant company is liable for the tax imposed by that act.

3. That the Commonwealth is entitled to recover as follows:

| | |
|---|---|
| Tax due, | $352.92 |
| Interest, | 59.11 |
| Attorney General's commission, | 17.64 |
| Total, | $429.67 |

Accordingly judgment is directed to be entered against the defendant and in favor of the Commonwealth for the sum of $429.67, unless exceptions be filed within the time limited by law.

Exceptions to various conclusions of law and the judgment of the court were dismissed. Defendant appealed.

*Error assigned,* among others, was in dismissing the exceptions.

*Charles F. Patterson,* with him *Frederick M. Ott,* and *Gans & Haman,* for appellant.

*William M. Hargest,* Second Deputy Attorney General, with him *John C. Bell,* Attorney General, for appellee, were not heard.

PER CURIAM, February 9, 1914:

The judgment appealed from is affirmed on the findings and opinion by the learned president judge of the Common Pleas.